```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――
PATRICK LOPRESTI, as TRUSTEE of ALA-
LITHOGRAPHIC INDUSTRY PENSION PLAN,
                                              10 Civ. 9462 (JGK)
               Plaintiff,
                                              MEMORANDUM ORDER AND
        - against -                                  OPINION

PACE PRESS, INC., PBS LITHO, INC.,
DG3 NORTH AMERICA, INC., JACK
MANGIARACINA, JONATHAN VITALE and
SETH DIAMOND,

               Defendants.
―――――――――――――――――――――――――――――――
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Patrick LoPresti ("LoPresti"), brought this action as Trustee of the ALA-Lithographic Industry Pension Plan (the "Plan"), against Pace Press, Inc. ("Pace Press"), PBS Litho, Inc. ("PBS Litho"), DG3 North America, Inc. ("DG3"), and Jack Mangiaracina, Jonathan Vitale, and Seth Diamond, the owners and shareholders of Pace Press and PBS Litho (collectively, the "Individual Defendants"), to recover withdrawal liability as a result of the default of Pace Press and the defendants' actions allegedly to evade and avoid the payment of withdrawal liability pursuant to Section 4212 of the Employee Retirement Income Security Act of 1974 (codified as amended at 29 U.S.C. § 1392) ("ERISA").  Defendant DG3 moves to dismiss the complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

In deciding the defendant's motion to dismiss, the Court may consider documents attached to the Complaint or incorporated in it by reference, matters of which judicial notice may be taken, or documents that the plaintiffs relied upon in bringing

2

suit and either are in his possession or of which he had knowledge. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 467 (S.D.N.Y. 2009).

II

The following allegations are assumed to be true for the purposes of this motion. The plaintiff is a Trustee of the Plan, which is an "employee pension benefit plan" and a "multiemployer plan" for the purposes of sections 3(2), 3(3), and 3(37) of ERISA, 29 U.S.C. §§ 1002(2), 1002(3), and 1002(37). (Declaration of Susan M. Jennik ("Jennik Decl."), Ex. 1 "Complaint ("Compl.")" ¶ 2.) The defendant DG3 is an "employer" within the meaning of section 3(5) of ERISA, § 1002(5). (Compl. ¶ 6.) Pace Press was an "employer" within the meaning of section 3(5) of ERISA, § 1002(5), and a member of the Metropolitan Lithographers Association, Inc. ("MLA"). (Compl. ¶¶ 3, 12.) Pace Press was a signatory to a 2005-2009 collective bargaining agreement with Local One-L, Amalgamated Lithographers of America GCC/IBT ("the Union"), and as such, was obligated to make periodic contributions to the Plan to provide retirement benefits to covered workers. (Compl. ¶ 12.)

On or about September 15, 2008, Pace Press, PBS Litho, and the Individual Defendants entered into a Wind Down Agreement

3

(the "Agreement") with Merrill Lynch Commercial Finance Corporation. (Compl. ¶ 21.) The Agreement indicated that Pace Press intended to sell its assets, including its customer lists, to DG3 for $3,350,000. (Compl. ¶ 21.) On or about September 30, 2008, Pace Press unsuccessfully sought a general release of DG3 by the Plan for any claims for withdrawal liability in exchange for a payment of $50,000. (Compl. ¶¶ 22-23.) Pace Press indicated that the sale of Pace Press was contingent upon attaining this release. (Jennik Decl., Ex. F to Compl. "Release Letter" at 1.) Nonetheless, on or about October 3, 2008, the parties entered into an Asset Purchase Agreement ("APA"), which provided for the sale of the equipment, customer lists, and capital stock of Pace Press and PBS Litho to DG3 for $3,500,000. (Compl. ¶ 24.) The APA provided that DG3 was not purchasing any assets related to Pace Press' employee benefit program, and was only liable for those liabilities that it had expressly and specifically assumed.[1] The plaintiff alleges that DG3 has

---

[1] Although the Complaint refers to the APA, see Compl. ¶ 24, a copy of the APA is not attached to the Complaint. DG3 has attached a copy of the APA to the Declaration of LJ Baillargeon ("Baillargeon Decl") at Exhibit A. The plaintiff argues that, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the Court must treat this motion to dismiss as one for summary judgment under Rule 56 because the defendant has relied on matters outside of the pleadings. The Court rejects this argument because the APA is integral to the Complaint. See DKR Capital Inc. v. AIG Int'l W. Broadway Fund, Ltd., No. 03 Civ. 1568, 2003 WL 22283836, at *2 n.1 (S.D.N.Y. Oct. 02, 2003) (quoting Int'l Auditext Network v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Thus, the Court may consider the document "without converting the proceeding to one for summary judgment." Id. (citation and quotation marks omitted). Moreover, as discussed below, the APA strengthens the plaintiff's Complaint.

carried on the business of Pace Press, and continues to employ its principals, the Individual Defendants. (Compl. ¶¶ 26-27.)

On October 24, 2008, Pace Press withdrew from the Plan in a complete withdrawal and ceased making contributions to the Plan. (Compl. ¶¶ 13-14.) As a result, the Plan assessed withdrawal liability against Pace Press pursuant to sections 4211 and 4219 of ERISA, 29 U.S.C. §§ 1391, 1399. (Compl. ¶ 15.) On November 20, 2008, in accordance with section 4219(b) of ERISA, 29 U.S.C. § 1399(b), the Plan sent Pace Press a demand for withdrawal liability in the amount of $1,237,363. (Compl. ¶¶ 15-16; Jennik Decl., Ex. B to Compl. "Demand Letter" at 1.)[2] Pace Press failed to make the first quarterly payment when due and took no steps to cure its delinquency. (Compl. ¶ 17.) The Complaint alleges that the failure to pay and to cure the non-payment constituted defaults under ERISA and the Plan. (Compl. ¶ 18.)

On September 29, 2009, the Plan brought an action against Pace Press seeking payment of the withdrawal liability. (Compl. ¶ 20.) Pace Press did not answer the complaint, and a default judgment was issued on November 13, 2009. (Compl. ¶ 20.)

The plaintiff filed this action against DG3, the Individual Defendants, PBS Litho, and Pace Press on December 20, 2010.

III

---

[2] Although the amount of withdrawal liability is listed as $1,326,312.86 in the Complaint, the Demand Letter, which included the relevant calculations, reports the total amount of withdrawal liability as $1,237,363. (Compl. ¶ 15; Demand Letter at 1.)

5

DG3 moves to dismiss the Complaint on the ground that the plaintiff has failed to assert a plausible cause of action against it.  DG3 argues that an employer subject to withdrawal liability can only transfer such liability to a purchaser if the employer negotiates an agreement meeting the conditions for transfer pursuant to 29 U.S.C. § 1384.  DG3 also argues that withdrawal liability cannot be imposed on a purchaser who engages in an arms-length transaction.

Under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, et seq. (collectively, "MPPAA"), "an employer who withdraws from a multiemployer plan, with certain exceptions, is assessed 'withdrawal liability,' that is, the employer is required to continue funding its proportionate share of the plan's unfunded vested benefits."  ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, 846 F.2d 879, 881 (2d Cir. 1988) (citing 29 U.S.C. §§ 1381, 1391).  Section 1392(c) of the MPPAA provides:  "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."  29 U.S.C. § 1392(c).  Accordingly, "any assets that were transferred in order to 'evade or avoid liability,' as well as the parties to whom they were improperly transferred, must be within the reach of the

6

statute." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993) (citation omitted).

One exception to the imposition of withdrawal liability is when a "seller engages in a 'bona fide, arm's-length sale of assets to an unrelated party'" and, "[a]mong other requirements, the purchaser of the assets . . . ha[s] 'an obligation to contribute to the plan . . . .'" Hop Energy, LLC v. Local 553 Pension Fund, No. 09 Civ. 8269, 2010 WL 3398475, at *2 (S.D.N.Y. Aug. 26, 2010) (citing 29 U.S.C. §§ 1384(a)(1), 1384(a)(1)(A)). However, "'exemptions to a withdrawing employer's liability should be narrowly construed.'" Id. at *3 (quoting N.Y. State Teamsters Conf. Pension & Retirement Fund v. St. Lawrence Transit Mix Corp., 612 F. Supp. 1003, 1009 (N.D.N.Y. 1985)).

The defendant misconstrues section 1384 as setting forth the elements a party must establish in order to state a claim for withdrawal liability. However, section 1384 only provides for a situation where an employer may avoid withdrawal liability under the theory that a "complete or partial withdrawal of an employer . . . [has] not occur[red]." 28 U.S.C. § 1384(a)(1). Section 1384 provides a means for a seller to avoid withdrawal liability by requiring, among other things, that the purchaser has an obligation to contribute to the plan. The provision does not address the pleading requirements for withdrawal liability when the parties have not satisfied the section 1384 exception.

Therefore, because there is no agreement that complies with section 1384, section 1384 does not bar the plaintiff's claim against DG3.

Rather, the plaintiff has stated a claim against DG3 by alleging that the parties structured the asset sale to evade and avoid withdrawal liability. See Compl. ¶ 33. The plaintiff has alleged that the parties were aware of Pace Press' obligation to contribute to the Plan, see Compl. ¶ 37, and that "a principal purpose" of the asset sale was to avoid the imposition of withdrawal liability. See Compl. ¶ 38. These allegations are sufficient to state a claim for withdrawal liability. See <u>Santa Fe Pac. Corp. v. Cent. States, Se. and Sw. Areas Pension Fund</u>, 22 F.3d 725, 727 (7th Cir. 1994). Moreover, DG3, as the purchaser of the assets, is a party within the reach of this action. See <u>IUE AFL-CIO Pension Fund</u>, 9 F.3d at 1056 (including the purchaser of assets as a party for the purposes of withdrawal liability).

Moreover, the APA, which DG3 has attached to its papers, strengthens the plaintiff's allegations because the plaintiff can point to specific provisions in the APA that indicate the parties' knowledge of Pace Press' withdrawal liability and intent to evade such liability. See <u>id.</u> at 1058 (holding that a plaintiff stated a claim for withdrawal liability by referencing passages in the Asset Sale Agreement that indicated the

8

defendant "knew about the withdrawal liability" and tried to avoid assuming this liability). Here, the plaintiff references section 2.4 of the APA, which purports to prevent DG3 from assuming any liabilities not explicitly assumed in the APA, and section 6.2(f) of the APA, which indicates that DG3 was aware of withdrawal liability. Therefore, the plaintiff has stated a claim for withdrawal liability against DG3.

## CONCLUSION

For the reasons explained above, DG3's motion to dismiss is **denied**. The Clerk is directed to close Docket No. 8.

SO ORDERED.

Dated:   New York, New York
         May 27, 2011

                                    John G. Koeltl
                              United States District Judge